UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 12-01362 MMM (CWx) | Date | January 30, 2013 |

| | |
|---|---|
| Title | *Destiny Bigby v. DS Waters of America Inc et al.* |

Present: The Honorable     MARGARET M. MORROW

| ANEL HUERTA | None |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     **Order Remanding Action to State Court for Lack of Subject Matter Jurisdiction**

On November 23, 2011, plaintiff Destiny Bigby commenced this wrongful termination action in Los Angeles Superior Court.[1]  On February 16, 2012, defendant DS Waters of America Inc. ("Waters") removed the action to this court, invoking the court's diversity jurisdiction.[2]  The court ordered defendant to show cause why the action should not be remanded to state court for lack of subject matter jurisdiction,[3] and defendant filed a response asserting that there was federal jurisdiction to hear the case.[4]

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Waters employed Bigby as a "call center representative" November 15, 2010; she was

---

[1]Notice of Removal ("Removal"), Exh. 1 ("Complaint"), Docket No. 1 (Feb. 16, 2012).

[2]Removal at 2.

[3]Order to Show Cause ("OSC"), Docket No. 9 (Feb. 28, 2012).

[4]Response to Order to Show Cause ("Response"), Docket No. 10 (Mar. 12, 2012).

terminated on February 4, 2011.[5]  After being hired, Bigby attended a four week training program. She did not miss any time during this period.[6]  On approximately February 3, 2011, Bigby was required to appear in Los Angeles Superior Court for a hearing on an application for temporary restraining order.[7]  Bigby allegedly gave Waters reasonable advance notice of her intention to take the morning off.[8]  She was notified that she had to return to court for a 1:30 pm session, and allegedly informed Waters of this as well.[9]

Presumably as evidence that her reason for not appearing at work was legitimate, she alleges that the state court granted her application for temporary restraining order in an order filed February 3, 2011.[10]

Bigby alleges that on February 4, 2011, she was wrongfully terminated from her position for allegedly failing to adhere to Waters's policies, procedures, and guidelines regarding attendance.[11] Several months after her termination, Bigby filed a single claim for wrongful termination in violation of public policy.[12]  Her claim is based on the policy embodied in California Labor Code § 230(c), which states that "[a]n employer may not discharge or in any manner discriminate or retaliate against an employee who is a victim of domestic violence or a victim of sexual assault for taking time off from work to obtain or attempt to obtain any relief, including, but not limited to, a temporary restraining order."

## II.  DISCUSSION

### A.    Legal Standards Governing Removal Jurisdiction

The right to remove a case to federal court is entirely a creature of statute.  See *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979).  The removal statute, 28 U.S.C. § 1441, allows defendants to remove when a case originally filed in state court presents a federal

---

[5]Complaint, ¶ 6.

[6]*Id.*, ¶ 7.

[7]*Id.*, ¶ 8.

[8]*Id.*

[9]*Id.*

[10]*Id.*, ¶ 9.

[11]*Id.*, ¶ 10.

[12]*Id.* at 3.

question or is between citizens of different states and involves an amount in controversy that exceeds $75,000.  See 28 U.S.C. §§ 1441(a), (b); see also 28 U.S.C. §§ 1331, 1332(a).  Only state court actions that could originally have been filed in federal court may be removed.  28 U.S.C. § 1441(a); see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988), and *Takeda v. Nw. Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985)).  "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* (citing *Libhart*, 592 F.2d at 1064).  "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990), and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

**B.      Whether This Case Was Properly Removed Under 28 U.S.C. § 1332**

Defendant contends that this matter falls within the court's diversity jurisdiction under 28 U.S.C. § 1332.  "[J]urisdiction founded on [diversity] requires that parties be in complete diversity and the amount in controversy exceed $75,000." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); see 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States. . .").

**1.      Complete Diversity**

Federal courts have jurisdiction only where there is complete diversity: the plaintiff's citizenship must be diverse from that of each named defendant.  28 U.S.C. §§ 1332(a)(1), 1332(c)(1); see *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 n. 3 (1996); see also *Cook v. AVI Casino Enters., Inc.*, No. 07-15088, 2008 WL 4890167, *3 (9th Cir. Nov. 14, 2008) (Unpub. Disp.) ("We have jurisdiction only if Cook, a resident of California, has citizenship which is diverse from that of every defendant," citing *Lewis*, 519 U.S. at 68).  Defendant's notice of removal states that Bigby is a citizen of California.[13]  It also alleges that Waters is a Delaware corporation with its principal place of business in Georgia.[14]  Consequently, the complete diversity requirement appears to be met.

**2.      Amount in Controversy**

---

[13]Removal, ¶ 8.

[14]*Id.*, ¶ 9.

The court turns to whether the amount in controversy exceeds $75,000. "[W]hen a complaint filed in state court alleges on its face an amount in controversy sufficient to meet the federal jurisdictional threshold, [the amount in controversy] requirement is presumptively satisfied unless it appears to a 'legal certainty' that the plaintiff cannot actually recover that amount." *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007). See also *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) (stating that "the sum claimed by the plaintiff controls if the claim is apparently made in good faith" and that "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal"). Where, by contrast, "it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled[,] . . . [courts] apply a preponderance of the evidence standard." *Guglielmino*, 506 F.3d at 699. Finally, "when a state-court complaint affirmatively alleges that the amount in controversy is less than the jurisdictional threshold, the 'party seeking removal must prove with legal certainty that [the] jurisdictional amount is met.'" *Id.* (quoting *Lowdermilk v. U.S. Bank National Association*, 479 F.3d 994, 1000 (9th Cir. 2007)). Because Bigby's state court complaint is silent as to the amount in controversy, Waters must prove by a preponderance of the evidence that the jurisdictional threshold is satisfied.

"In determining whether the defendant has made such a showing, the district court must first consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy." *Faulkner v. Astro-Med, Inc.*, No. C 99–2562 SI, 1999 WL 820198, * 2 (N.D. Cal. Oct. 4, 1999) (citing *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). "If the complaint does not specify a damages amount, the court can look at facts in the complaint and require the parties to submit evidence relevant to the amount in controversy." *Id.* (citing *Conrad Assocs. v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998)). A defendant must submit "summary-judgment-type evidence" to establish that the actual amount in controversy exceeds $75,000. *Singer*, 116 F.3d at 377 (citing *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335-36 (5th Cir. 1995)). "A defendant can introduce other jury verdicts to bolster its claim that potential punitive damages would raise the amount in controversy to over $75,000, but *those jury verdicts must involve facts analogous to its own case*." *Faulkner*, 1999 WL 820198 at *4 (citing *Conrad*, 994 F. Supp. at 1201) (emphasis added).

Defendant contends that the jurisdictional amount is satisfied, citing three categories of damages sought in the complaint: compensatory damages, punitive damages, and attorneys' fees.[15] The court considers each in turn.

### a.    Compensatory Damages

---

[15]Removal at 2-6.

Defendant proffers the declaration of its human resources manager, Valorie Blankenship.[16] Blankenship states that Bigby worked multiple forty-hour weeks during her training period, and was then scheduled to work between twenty-five to twenty-eight hours a week thereafter.[17]   Defendant asserts that Bigby would have been expected to work forty-hour or longer weeks during peak seasons, which generally exist five months a year.[18]

Based on these estimates, it contends that Bigby's compensatory damages claim places at issue between $17,550 and "over $23,000."[19]   The "unlikely" $17,550 low end of this range is derived from multiplying three figures: the minimum 25 hours per week she was expected to work, her hourly wage of $13, and a given time of 54 weeks.[20]   Defendant reaches the "over $23,000" high end of the range by adding two figures: (1) the product of the anticipated 40 hours per week she was expected to work during peak seasons, her hourly wage of $13, and the number of weeks of peak season, estimated at 21.5 weeks; and (2) the product of the 28 hours per week she was expected to work normally, her hourly wage of $13, and the number of non-peak season weeks, estimated at 32.5 weeks.[21]   The sum of these two amounts is slightly more than $23,000.[22]   Defendant also asserts, without evidentiary support, that Bigby would have earned some unspecified amount of overtime.[23]

Only the "unlikely" low figure is a credible calculation of Bigby's time and hours, as it is based on the minimum amount of time she could have worked and her hourly wage.  These numbers are relatively definite estimates supported by concrete evidence.  The remainder of defendant's calculation relies too heavily on speculation and guesswork.  It provides almost no explanation as to why it selected certain figures, despite the fact that it has access to Bigby's time records and thus has the ability to generate numbers that are more than purely conjectural.  See *Roth v. Comerica Bank*, 799 F.Supp.2d 1107, 1130 (C.D. Cal. 2010) ("Here, defendants are in the best position to adduce

---

[16]Declaration of Valorie Blankenship in Support of Defendant's Response to Order to Show Cause ("Blankenship Decl."), Docket No. 10 (Mar. 12, 2012).

[17]*Id*. at 3.

[18]*Id*.

[19]Response at 3.

[20]*Id*.  Defendant appears to have used 54 weeks because this action was removed 54 weeks after Bigby's termination.

[21]*Id*.

[22]*Id*.

[23]*Id*.

evidence regarding the working hours and wages of their tellers. . . .  Defendants, however, failed proffer evidence supporting their calculations regarding the amount in controversy").

Consequently, the court concludes that defendant has demonstrated by a preponderance of the evidence that Bigby's compensatory damages claim places approximately $18,000 in controversy. To exceed the jurisdictional threshold, therefore, defendant must show that Bigby's punitive damages and attorneys' fees claims place at least $57,000 in controversy.

### b.    Punitive Damages

"It is well established that punitive damages are part of the amount in controversy in a civil action."  *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) (citing *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943), and *Goldberg v. CPC Int'l Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982)).  However, the mere fact that a plaintiff seeks punitive damages is not sufficient, standing alone, to establish that the amount in controversy exceeds the jurisdictional threshold.  See *Lange v. State Farm Mut. Auto. Ins. Co.*, No. SA CV 08-1466 DOC, 2009 WL 322835, *1 (C.D. Cal. Feb. 9, 2009) ("When the amount in controversy depends largely on alleged punitive damages, the court 'will   scrutinize a claim . . . more closely than a claim for actual damages to ensure Congress's limits on diversity jurisdiction are properly observed,'" quoting *McCorkindale v. Am. Home Assurance Co./A.I.C.*, 909 F.Supp. 646, 655 (N.D. Iowa 1995)).

"Whether punitive damages are sufficient to meet the amount in controversy requirement is a two-part test."  *Lange*, 2009 WL 322835 at *1 (citing *Wiemers v. Good Samaritan Soc'y*, 212 F.Supp.2d 1042, 1047 (N.D. Iowa 2002)).  "First, punitive damages must be available as a matter of state law."  *Id*.  If punitive damages are available, the court examines "whether the amount of punitive damages will more likely than not exceed the required amount in controversy."  *Wiemers*, 212 F.Supp.2d at 1047; see also *Lange*, 2009 WL 322835 at *1; *Martinez v. Infinity Ins. Co.*, No. SA CV 08-1444 DOC, 2009 WL 302189, *1 (C.D. Cal. Feb. 4, 2009).  This can be achieved by examining jury verdicts in other cases addressing similar facts and *legal claims*.  See *Simmons v. PCR Tech.*, 209 F.Supp.2d 1029, 1033 (N.D. Cal. 2002) ("To establish probable punitive damages, defendant may introduce evidence of jury verdicts in cases involving analogous facts").  Under California law, punitive damages are available if plaintiff can show that defendant acted with oppression, malice, or fraud.  See CAL. CIV. CODE § 3294.  The court must thus examine defendant's evidence regarding the potential amount of punitive damages.

The complaint does not specify the amount of punitive damages Bigby seeks.  Without admitting liability, defendant contends that "[p]laintiff['s] punitive damage claim by itself likely exceeds the required sum" of $50,000.[24]  It supports this argument by providing a list of thirteen jury verdicts in "employment cases," and asserts the verdicts demonstrate that "an award of punitive damages in the case at bar will likely exceed $50,000."[25]  In examining the jury verdicts provided,

---

[24]*Id*.

[25]*Id*. at 5.

the court is mindful that in *State Farm Mut. Auto. Ins. v. Campbell*, the Supreme Court held that the Due Process Clause limits a punitive damages award to a single digit ratio of the compensatory damages award. This affects the relevance of pre-2003 jury verdicts in assessing possible punitive damages in this case. 538 U.S. 408 (2003).

Defendant first cites several wrongful termination cases involving discrimination on the basis of race,[26] disability,[27] or gender.[28] One case involved an FMLA claim in addition to a claim of racial discrimination.[29] Bigby does not allege any discrimination-based claims. She alleges only a wrongful termination claim based on a state policy requiring employers to allow workers to take time off to address issues of domestic violence.[30] The cases cited by defendant are therefore facially dissimilar. Consequently, they are not adequate to satisfy defendant's burden of showing the amount in controversy by a preponderance of the evidence.

Second, defendant cites a jury verdict in a case in which plaintiff alleged wrongful termination because she sought overtime compensation in compliance with state law. See *Martin v. The "Old" Turner Inn*, 42 Trials Digest 6th 3, 2003 WL 22416020 (Cal. Super. Ct. Feb. 27, 2003). Even though the jury awarded $50,000 in non-economic and punitive damages, the presiding judge, in compliance with *State Farm v. Campbell*, reduced this amount to $10,000. *Id*. Bigby does not allege that she was terminated in retaliation for seeking overtime pay.[31] Thus, the cases are not similar.

---

[26]The five cited racial discrimination jury verdicts are: *Simmons v. PCR Tech.*, 209 F.Supp.2d 1029, 1033 (N.D. Cal. 2002); *Prasad v. Univ. of Cal. Davis Med. Ctr.*, JVR No. 802857 (Cal. Super. Ct. Jan. 1, 2001); *Carrol v. Interstate Brands Corp. dba Wonderbread, dba Hostess & dba Dolly Madison, et al.*, Case No. 995728, 1 C.E.L.M. 68 (Cal. Super. Ct. Sept. 2000); *Lane v. Hughes Aircraft Co.,* JVR No. 801112 (Cal. Super. Ct. July 1, 1995); and *Fitzpatrick vs. Hon Hai Precision Indus. Co. Ltd.,* 11 Trials Digest 12th 13, 2008 WL 5716121 (Cal. Super. Ct. July 3, 2008).

[27]*Castro vs. Woodfin Suites Hotels LLC,* 42 Trials Digest 11th 9, 2008 WL 4613608 (Cal. Super. Ct. July 15, 2008).

[28]*Kobylka v. Willett Brewing Co., Inc.; Ankeny v. Kobylka*, JVR No. 123044 (Cal. Super. Ct. Sept. 1, 1993); and *Ambrose v. United States Steel Corp.*, JVR No. 45877, 1985 WL 352833 (Cal. Super. Ct. July 1, 1985). Notably, one of the racial discrimination cases cited above, *Prasad v. Univ. of Cal. Davis Med. Ctr.*, also involved a claim of sex discrimination.

[29]Response at 4-5 (citing *Fitzpatrick vs. Hon Hai Precision Indus. Co. Ltd.*, 11 Trials Digest 12th 13, 2008 WL 5716121 (Cal. Super. Ct. July 3, 2008)). The $875,000 punitive damage award in this case was reversed by the trial judge.

[30]*Id*.

[31]*Id*.

Third, defendant cites a case involving the termination of a security guard who had a physical confrontation with a store customer after removing the customer from the store for shoplifting. The customer's mother sued the store, and the security guard was terminated after the case was settled. The plaintiff alleged wrongful termination and intentional infliction of emotional distress. See *Jennings v. Alpha Beta Markets*, 38 Trial Digest (TD) 87237, 1000 WL 53729 (Cal. Super. Ct.). Bigby does not allege intentional infliction of emotional distress, or any other claim that requires she prove that defendant's conduct was outrageous.[32] Additionally, the facts in *Jennings* are much more egregious, involving a physical confrontation between the plaintiff and a shoplifter, lies told by plaintiff's supervisors, and the fact that defendant violated company procedures in effecting the termination. *Id*. The case is thus distinguishable on its facts.

Fourth, defendant cites two cases in which plaintiffs pled a multitude of claims in addition to wrongful termination. See *Boren v. Global Med. Mobile Diagnostics, Inc.*, 25 Trial Digest 11th 9, 2008 WL 2414815 (Cal. Super. Ct. May 22, 2008) (alleging wrongful termination, misclassification, failure to provide itemized wage statements, failure to pay wages upon discharge, failure to pay commissions, fraud, negligent misrepresentation, and violations of the California Business and Professions Code against multiple defendants); *Rea v. Marshalls of Cal. LLC*, 2001 WL 36372839 (Cal. Super. Ct. Mar. 1, 2001) (alleging unlawful restraint, false imprisonment, intentional infliction of emotional distress, harassment, humiliation, unsafe working conditions in violation of OSHA, and constructive wrongful termination in a case in which plaintiff was locked in small back office where he was accused, detained, and questioned regarding money stolen from the store's safe). While the cases do involve wrongful termination, they also involve a host of other legal claims that would give rise to different and additional claims for damages, as well as potential statutory penalties. The amount in controversy in the cases was thus substantially greater than the compensatory damages at issue here. The cases are facially dissimilar, and Waters does not explain why it believes they inform a judgment as to the potential range of punitive damages here.

Finally, the defendant cites one case that involves a termination based on violation of an employer's attendance policy. See *Reyes v. JH Design Grp., Inc.*, 28 Trials Digest 3d 70, 2000 WL 463481 (Cal. Super. Ct. Feb. 23, 2000). In *Reyes*, the jury awarded $3,800 in compensatory damages and $128,077 in punitive damages. *Id*. Although this is perhaps the most analogous case cited by defendant, it offers but a short explanatory parenthetical to show that *Reyes* indicates the likely verdict range here – ("[damages] in wrongful termination for attendance of an Employment Development Department hearing").[33] This provides no information concerning the nature of the case and does not satisfy defendant's burden. See *Simons v. PCR Tech.*, 209 F.Supp.2d at 1031 (citing *Gaus v. Miles, Inc.*, 980 F.2d at 566). In fact, the case is not similar, since it involved a termination that allegedly constituted retaliation for a worker's decision to testify against the employer at an

---

[32]*Id*.

[33]Response at 5.

Employment Development Department hearing for a co-worker. 2000 WL 463481. Additionally, the case was decided in 2000, before *State Farm*; this suggests that the high punitive damages award returned would likely be unconstitutional if it occurred today. For all of these reasons, defendant cannot rely on this jury verdict to demonstrate that punitive damages will more likely than not exceed $50,000. Furthermore, even if the court were to accept the verdict as a good indicator of what might occur here, a single case is not reliable,"summary-judgment-type evidence" demonstrating that punitive damages will *more likely than not* exceed $50,000.

In sum, the cited jury verdicts are distinguishable and provide no basis for concluding that the potential punitive damages recoverable in this case exceed $50,000. Neither the facts nor the legal claims asserted in the cases are sufficiently analogous to warrant a finding that a punitive damages award of more than $50,000 in Bigby's favor is more likely than not.[34]

### c.     Attorneys' Fees

Waters finally argues that the amount in controversy is satisfied because plaintiff seeks attorneys' fees.[35] Attorneys' fees may be considered in evaluating whether the amount in controversy requirement has been satisfied if a plaintiff sues under a statute that authorizes an award of fees to the prevailing party. See *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy"); *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982); see also *Peterson v. BASF Corp.*, 12 F.Supp.2d 964, 968 (D. Minn. 1998) (holding that a district court scrutinizes both punitive damages and attorneys' fees claims more closely than a claim for actual damages in determining the amount in controversy). It is not sufficient simply to note that attorneys' fees are recoverable; rather, some breakdown or estimate must be provided and justified. See, e.g., *Ajimatanrareje v. Metro. Life Ins. Co.*, No. C 99–0614 SI ARB, 1999 WL 319216, *5 (N.D. Cal. May 12, 1999); *Faulkner*, 1999 WL 820198 at *4.

First, defendant fails to demonstrate that attorneys' fees are recoverable. Bigby has not alleged a claim under the Fair Employment and Housing Act, which has an attorneys' fee provision; rather, she has asserted a claim based on the common law tort of wrongful termination. Defendant cites no authority demonstrating that attorneys' fees are available in such a case. Second, defendant has proffered no evidence regarding the amount of attorneys' fees incurred as of the date of removal nor any good-faith projection of future attorneys' fees. It merely notes that attorneys' fees can be

---

[34]The defendant cites *Simmons v. PCR Tech.*, 209 F.Supp.2d at 1035, for the proposition that complete factual similarity is not required to find that past jury verdicts prove likely damages by a preponderance of the evidence. While this is true, a defendant must demonstrate that there is at least *some* similarity between the cases beyond the general nature of the claim (i.e., wrongful termination) asserted. The court does not construe *Simmons* as announcing the broad proposition that a defendant can rely on jury verdicts that have no evident factual similarity to the case at hand.

[35]Response at 5-6.

considered in determining the amount in controversy.[36]  Even had Waters offered a detailed estimate of plaintiff's attorneys' fees, courts in the Ninth Circuit are split as to whether a court should consider only attorneys' fees incurred as of the time of removal or fees reasonably likely to be incurred after the date of removal.  Compare *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1011 n. 4 (N.D. Cal. 2002) ("While an estimate of the amount in controversy must be made based on facts known at the time of removal, that does not imply that items such as future income loss, damages, or attorneys fees likely to be incurred cannot be estimated at the time of removal") with *Faulkner*, 1999 WL 820198 at *4 ("When estimating attorney's fees for the purposes of establishing jurisdiction, the only fees that can be considered are those incurred as of the date of removal," citing *Miranti v. Lee*, 3 F.3d 925, 928 (5th Cir. 1993)); *Green v. Party City Corp.*, No. CV-01-09681 CAS (Ex), 2002 WL 553219, *2 & n. 3 (C.D. Cal. Apr. 9, 2002) (calculating attorneys' fees based "only [on] work done by plaintiff's counsel prior to removal").  Because Waters has not adduced "summary-judgment-type evidence" regarding the likely amount of plaintiff's attorneys' fees, the court need not resolve whether it is appropriate to consider only the attorneys' fees incurred as of the date of removal or fees reasonably likely to be incurred thereafter.

Waters cites a district court case from the Eastern District of Washington as an example of a substantial fee award in an employment case.  See *Johnson v. Goodyear Tires*, JVR No. 112724, 1992 WL 529898 (E.D. Wash. Mar. 1, 1992).  *Johnson v. Goodyear Tires* involved pregnancy discrimination, a claim Bigby does not assert.[37]  *Id*.  Additionally, the claim was asserted under a Washington state statute providing for the recovery of fees.  See *Johnson v. Goodyear Tire & rubber Co.*, 790 F.Supp. 1516, 1530  (E.D. Wash. 1992) (citing RCW 49.60.030(2)).  Defendant fails to explain why the case is similar to Bigby's, either on its facts or in terms of the amount of resources required to litigate it.[38]

### III.  CONCLUSION

For the reasons stated, defendant has not met its burden of demonstrating that the amount in controversy exceeds $75,000 by a preponderance of the evidence.  The court therefore lacks subject

---

[36]*Id*.

[37]Compare *id*. with Complaint at 3-4.

[38]Waters relies on *Simmons v. PCR Technology*, 209 F.Supp.2d at 1035, for the proposition that attorneys' fees awards are often "substantially high" in "discrimination claims such as those in this case."   The court does not necessarily disagree with this proposition in the abstract.  That fact, however, does not relieve defendant of its burden to demonstrate by a preponderance of the evidence that the amount of controversy in this case exceeds $75,000.  Stated differently, the fact that fee awards in employment cases can be high does not mean that any fee award in this case will necessarily be high.

matter jurisdiction to hear the action, and the clerk is directed to remand the case to the Los Angeles Superior Court forthwith.